## Myers *against* Hart.

Evidence consists of that which is proved, and under particular circumstances, of that which is not proved, and upon an allegation of fraud, the facts given in evidence, as well as the inferences from them, can only be determined by a reference to the jury.

ERROR to the common pleas of *Lycoming* county.

This was an action of replevin for a quantity of store goods in boxes. The case and all the facts in it are circumstantially stated in the opinion of the court.

*Armstrong* and *Campbell*, for plaintiff in error.

*Fleming*, for defendant in error.

The opinion of the court was delivered by

Huston, J.—In this case the defendants in error took out a replevin for sundry goods, under the following circumstances:—They had sold to Stephen Myers, of Bradford county, in June 1837, a bill of goods amounting to near 800 dollars. The goods were put in boxes and sent by drays to a warehouse on the Schuylkill, to be forwarded to Myers—directed to the care of Mr Elliot, who had a storehouse on the canal at Williamsport, in Lycoming county; nothing was said as to the mode in which they were to be carried from thence to Myers's store, about fifty miles by land.

Myers went home—he had bought goods from four other houses at the same time, in Philadelphia. On the 21st July, he wrote to Hart, Cummings & Hart, that owing to hard times, and the impossibility of collecting money, he had not thought it prudent to bring those goods from Mr Elliot's, at Williamsport—that there was a gentleman in Bradford to whom he thought they could sell the goods, and he at the same time sold his old stock of goods to the same person; he requested them to inform four other mercantile houses of this, and wished one of the plaintiffs below to meet him at Williamsport, on the last day of July or 1st of August, to take charge of their goods.

The other houses wrote to an agent, but Mr Cummings, one of this firm, went there—Myers met him, and was very sorry he could not give the goods as he wished to do, by reason of a *testatum fieri facias* for 1813 dollars 50 cents from Bradford county, which had been delivered to the sheriff of Lycoming county, on the 31st of July. On this the sheriff, without making a formal levy, directed Mr Elliot to detain the goods.

[Myers v. Hart.]

Myers and Cummings went to Bradford, and an assignment was agreed on between them, that the goods in question were to be delivered to a Mr Spalding, who was to pay Hart, Cummings & Hart; but it was broken off, because Spalding would not take Myers's old goods, and sell them along with the new, and, after paying Hart, Cummings & Hart, agree to pay the balance to Keeler, who had sent the *testatum fieri facias.* Cummings had returned to Williamsport—a replevin was taken out for the goods—soon after, this paper was brought to Mr Loyd, sheriff of Lycoming—he had not made a levy, or taken a schedule of the goods:

To Thomas Loyd, sheriff of county of Lycoming.

Sir:—You have now in your possession a *testatum fieri facias,* issued by the prothonotary of the county of Bradford, in favor of the undersigned, William Keeler, against the undersigned Stephen Myers.

It is understood and agreed between the undersigned, that you return said execution to the office (on Myers paying you the costs which have accrued) without a levy on the same, unless made prior to the receipt of this. In case a levy has been made, said Myers acknowledges that the execution is unsatisfied, and that the judgment remain the same as at the issuing of this writ.

Towanda, August 7, 1837.　　Signed,　　Wm. Keeler.
Witness, George A. Mix.　　　　　　　　Stephen Myers.

There being no levy endorsed on the writ, the sheriff endorsed it to the prothonotary of Bradford; we only know on what day this was, by consulting other facts. Myers had wagons there to remove the goods, but this replevin was put into the hands of the sheriff, as soon as the *fieri facias* was returned, and he seized the goods under the replevin on the 12th of August.

It would seem Myers removed the goods bought from the other merchants, or some of them.

On the 14th of August, Cummings, who was on his way to the city, wrote as follows:—

New Berlin, August 14, 1837.

Dear Sir:—This day I received from Messrs Bailey and Mix, a letter, stating that they had made an arrangement with Myers and Keeler, for the payment of those goods in your store, *which Mr Myers will show to the sheriff* of your county, when calling for them. You will therefore give the goods to Mr Myers.

Respectfully yours,
Messrs Elliots.　　　　　　　　　　James A. Cummings.

It would seem that Cummings did not know, that two days before, the goods had been replevied, and were not in the power of Mr Elliot.

The arrangement made by Mix and Bailey, with Keeler and Myers, does not appear to have been shown to the sheriff or to Elliot, and was not produced at the trial. Baily was called, who

x.—k

proved, that he and Mix had received a letter from Cummings—that it was lost; that he recollected they received a letter from Cummings, but did not recollect its contents; but he recollected distinctly, that they did what the letter requested, but what they did, he could not recollect.

William B. Spelding proved, that he had at one time agreed to take the *new goods and the old*, that Cummings then wrote to Mix and Bailey, and that William B. Spalding was to pay the plaintiffs and Keeler; that he carried this letter to Mix and Bailey, and delivered it to them; that when he came to see the old goods, he and Myers could not agree about the price, and Myers said if he would not take the old goods, he should not have the new, and they parted; and all proposed arrangements were at an end, so far as William B. Spalding was concerned. William Keeler was also examined, and after stating pretty much as Spalding had stated, he proceeded to give an account of what he had proposed, after Spalding was gone. This in substance was, that Myers should keep the old goods and get the new, and go on as usual, and that the plaintiffs should have his payment of the new goods, and Keeler be paid from proceeds of the old, *as he considered his debt safe.*

He went on to say, if Cummings agreed to that, he was to write back to Bailey and Mix—and I was to lift my levy—Bailey and Mix told me they had a letter, I did not see it, says he. ·They told me an arrangement was made, and wanted me to release the levy; I did so; I did not release till Spalding refused to take the goods.

It will be remembered that when Cummings wrote the above letter, he said an arrangement was made with Bailey and Mix, which would be shown to them; I can not find that any such was ever shown; the letter was written seven days after the release of the goods was dated; there was no evidence as to what induced Cummings to write this letter, nor by whom it was sent to Elliots, it had no post mark on it.

The points stated for the opinion of the court, went on the ground that all was fair.

The court, as the case was complicated, and out of the ordinary course, in several respects left the facts to the jury. It was conceded that the levy as stated, did not affect the plaintiff's right, but in this court, the stress of the cause was put on Cummings's authority to Bailey and Mix. Independent of the uncertainty, as to what that agreement was, the counsel of the plaintiffs below, insisted the whole conduct of Myers and Keeler was intended to effect a fraud. The court in the fifth head of the charge, inserted the word "if" twice; and this was the great objection here; it was said, this was leaving it to the jury to find fraud, when there was no proof of fraud. In truth it was only leaving it to the jury to find, whether the witnesses were to be believed; and to find what defendant said was the contract with Mix and Bailey; though the contract itself, which was to have been shown in order to get the goods, was not shown,

[Myers v. Hart.]

and Bailey could not tell what it was, and Spalding and Keeler differed as to it.

That the court submitted a matter to the jury without evidence of it, has become a standing assignment of error; it might be stereotyped. The jury have the unquestionable right, not only to find the facts in every case, but the inferences fairly deducible from the facts proved; and this latter is as clearly within their power, as it is to decide on the credibility of witnesses. It has been truly said, that evidence consists, not only of what is proved, but what is not proved. We cannot say, that the facts, that Keeler said his judgment was sufficiently safe in Bradford—his *testatum* to Lycoming—his withdrawal of it, and the time of issuing and withdrawing it—the not showing to Elliot or the sheriff, the agreement made by Bailey—the total uncertainty about it, in all persons but Keeler, who could not be a witness to prove it, if sued for—a violation of it—in short, that the whole matter from the 21st July till the 14th of August would have been withdrawn from the jury, and the whole case properly decided on a few abstract points of law.

As to the proof of Myers's insolvency, his letter estopped him from denying it to these plaintiffs.

Judgment affirmed.